UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JEAN-GABRIEL BERNIER,** | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 16-cv-00828 (APM) |
| **JEFFERY ALLEN,** | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

I.

Defendant Jeffery Allen, Chief Physician for the Bureau of Prisons, seeks dismissal or, alternatively, entry of summary judgment as to Plaintiff Jean-Gabriel Bernier's sole claim that Defendant violated his Eighth Amendment rights. Bernier, a federal prisoner diagnosed with Hepatitis C, argues that Allen acted with deliberate indifference when, in December 2015, he denied Bernier treatment with Harvoni, a direct-acting antiviral drug that is highly successful in treating Hepatitis C. Allen made this decision based on a Federal Bureau of Prisons ("BOP") protocol that prioritized patients based on their "APRI score," a diagnostic measure of cirrhosis. Plaintiff's APRI score in December 2015 made him ineligible for Harvoni under the BOP protocol.[1]

In 2017, the court found that Allen enjoyed qualified immunity from suit because Plaintiff "ha[d] cited no binding case, and the court [was] aware of none, holding that denying a prisoner Harvoni to treat Hepatitis C based only on his APRI score violates the Eighth Amendment." *See*

---

[1] The court detailed the facts of this case in earlier decisions. *See Bernier v. Trump*, 242 F. Supp. 3d 31, 35–37 (D.D.C. 2017); *see also Bernier v. Trump*, 299 F. Supp. 3d 150, 152–154 (D.D.C. 2018). It need not repeat them at length here.

*Bernier v. Trump*, 242 F. Supp. 3d 31, 39 (D.D.C. 2017).  The court later reconsidered its decision, finding that its previous ruling had "framed the asserted right at issue too narrowly" by "defining the right in accordance with 'the very action in question.'"  *See Bernier v. Trump*, 299 F. Supp. 3d 150, 157 (D.D.C. 2018) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The court, however, deferred for another day defining the precise contours of the Eighth Amendment right that Plaintiff claims was clearly established and that Allen purportedly violated.

The court allowed Plaintiff to file an amended complaint and to properly serve it on Allen. *See id.* at 157–59.  The court directed that the amended complaint "should set forth with greater specificity" information about the personnel involved in Plaintiff's care and treatment, BOP's approval process for treatment with Harvoni, and Allen's role in denying Harvoni treatment to Plaintiff, so that the court could "make an informed determination about the qualified immunity question should Defendant Allen once more raise that defense as a ground for dismissal."  *See id.* at 159–60.  Plaintiff, with the assistance of appointed counsel, filed an amended complaint and properly served Allen.  Am. Compl., ECF No. 66 [hereinafter Am. Compl.]; Aff. of Service, ECF No. 72.  Allen then filed the present motion.  *See* Def.'s Mot. to Dismiss and for Summ. Judg., ECF No. 77 [hereinafter Def.'s Mot.].  At issue, once more, is whether Allen is entitled to qualified immunity.[2]

II.

As a threshold matter, the court treats Plaintiff's motion as one seeking dismissal under Rule 12(b)(6) only, and not as a motion for summary judgment under Rule 56.  The decision to convert a motion to dismiss into summary judgment "is committed to the sound discretion of the trial court."  *Maldonado v. District of Columbia*, 924 F. Supp. 2d 323, 328 (D.D.C. 2013) (citation

---

[2] Defendant also argues in his motion that Plaintiff has not adequately pleaded an Eighth Amendment violation.  *See* Def.'s Mot. at 12–20.  But the court need not reach that issue based on its decision on qualified immunity.

omitted). "The touchstone is fairness and whether consideration of summary judgment is appropriate." *See id.* In support of his Motion for Summary Judgment, Defendant submits his own declaration, as well as a declaration from another BOP physician. *See* Def.'s Mot., Exs. A and B. It would not be fair to Plaintiff to consider Allen's motion as one for summary judgment based on this extra-pleading evidence, as Plaintiff has had no opportunity to take discovery, including deposing Allen.

### III.

Qualified immunity entitles government officials to immunity from suit unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). If the right in question is not clearly established at the time of the decision, the official is entitled to qualified immunity and the court need not decide whether a constitutional violation occurred. *Dukore v. District of Columbia*, 799 F.3d 1137, 1144 (D.C. Cir. 2015). A court must consider the right asserted "not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichie v. Howards*, 566 U.S. 658, 665 (2012) (cleaned up). There need not be controlling authority directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted).

At the motion-to-dismiss stage, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Therefore, "[i]n order to defeat qualified immunity at the motion to dismiss stage, plaintiff must allege facts that plausibly establish" that the defendant violated clearly established law. *Boatwright v. Jacks*, 239 F. Supp. 3d 229, 233 (D.D.C. 2017).

IV.

Allen argues that Plaintiff fails to plausibly show that, in December 2015, Plaintiff had a clearly established "right to Harvoni treatment." *See* Def.'s Mot. at 13. If the court were to define the right so narrowly, Allen easily would prevail. Plaintiff points to no case law, and the court does not know of any ruling, that established a clear right under the Eighth Amendment to treatment with direct-acting antiviral drugs, such as Harvoni, at the time Allen declined Plaintiff's request. *Cf. Cunningham v. Sessions*, No. 16-cv-1292, 2017 WL 2377838, at *4 (D.S.C. May 31, 2017) ("In light of the rapidly evolving legal and medical developments in this area and the absence of any controlling Fourth Circuit or Supreme Court authority on the legal issue before the Court, there is no clearly established statutory or constitutional right *at this time* for inmates with chronic Hepatitis C to be treated with [direct-acting antiviral] drugs.") (emphasis in original). Plaintiff, therefore, cannot plausibly allege that Allen violated clearly established law, if one defines the right as narrowly as treatment for Hepatitis C with direct-acting antiviral drugs.

Plaintiff, however, posits a more broadly drawn Eighth Amendment right: the "right of prisoners to adequate medical care, and to be free from deliberate indifference to their serious medical needs." *See* Pl.'s Opp'n to Def.'s Mot., ECF No. 83 [hereinafter Pl.'s Opp'n], at 15 (citation omitted). Plaintiff cites to *Estelle v. Gamble*, in which the Supreme Court established that the Eighth Amendment prohibits the state from exhibiting "deliberate indifference to [the] serious medical needs" of a prisoner. 429 U.S. 97, 104 (1976); *see also* Pl.'s Opp'n at 15. But the broad right articulated in *Estelle* cannot, without more, defeat qualified immunity. To say that a prisoner must receive adequate medical care and not be subjected to deliberate indifference to his medical needs is "a broad general proposition." The principle is not defined "in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*, 566 U.S. at 665 (internal quotation marks and citation omitted); *cf. Ashcroft*, 563 U.S. at 742 ("The general

4

proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."); *cf. Saucier v. Katz*, 533 U.S. 194, 201–02 (2001) ("There is no doubt that *Graham v. Connor* clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough.") (cleaned up). Indeed, the Court in *Estelle* expressly stated that its ruling should not be taken to mean "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. Based solely on *Estelle* then, Plaintiff cannot overcome the qualified immunity bar.

No doubt owing to the absence of a long-term prison facility within the city limits, there is a dearth of D.C. Circuit and D.C. Court of Appeals precedent addressing the proper scope of a prisoner's Eighth Amendment right to receive medical treatment. Plaintiff cites no binding circuit precedent or a D.C. Court of Appeals decision that he views as comparable. *See Corrigan v. District of Columbia*, 841 F.3d 1022, 1041 (D.C. Cir. 2016) (identifying "controlling precedent from the Supreme Court, the applicable state supreme court, or from the applicable circuit court" as sources for clearly established law). The court thus looks outside the circuit for guidance. *See id.* (observing that "a robust consensus of cases of persuasive authority" also may be a source for clearly established law) (citation omitted).

The Third Circuit's recent decision in *Abu-Jamal v. Kerestes* is helpful. There, as here, a plaintiff with Hepatitis C alleged that prison officials had violated his Eighth Amendment rights by denying him treatment with direct-acting antiviral drugs. *See* 2019 WL 3246677, at *1 (3d Cir. July 19, 2019). Based on its own precedent, the Third Circuit identified three instances in which a prison official violates the Eighth Amendment by denying medical care: if the prison official

5

(1) delays necessary medical treatment for non-medical reasons, (2) opts for an easier and less efficacious treatment, or (3) prevents an inmate from receiving recommended treatment for serious medical needs. *See id.* at *5. The court found that the plaintiff in that case had avoided the qualified immunity bar, at the motion-to-dismiss stage, by plausibly alleging a rights violation in the first of these ways. Specifically, the plaintiff had plausibly alleged that prison officials had denied him Hepatitis C treatment because of cost, and not for a medical reason. *See id.* The court did not discount the possibility that, at the summary judgment stage, the defendant would be able to identify reasons other than cost to justify the denial of treatment, such as "that prioritization was necessary given a limited supply of the anti-viral drugs." *Id.* at *5 n.9. But on a motion to dismiss, the Third Circuit explained, it had to treat the plaintiff's fact averments as true, thereby allowing him to overcome the immunity bar at the pleading stage. *See id.* at *5.

Using the three categories of Eighth Amendment violations identified in *Abu Jamal* as a guide, and assuming these categories are "clearly established," Plaintiff does not rely on either the first or second type of violation. He does not allege that Allen delayed treatment for "non-medical" reasons, such as cost or administrative convenience. *See generally* Am. Compl; *cf. Roe v. Elyea*, 631 F.3d 843, 859 (7th Cir. 2011) (holding, in a case on which Plaintiff relies, that prison official was not entitled to qualified immunity where Hepatitis C treatment determination made based on categorical rule that all candidates for treatment had to have at least two years left of their sentence, a "consideration of administrative convenience rather than medical effectiveness"); *Lovelace v. Clarke*, Civ. No. 2:19cv75, 2019 WL 3728265, at *6 (E.D. Va. Aug. 7, 2019) (rejecting qualified immunity to state prison officials' refusal to treat with direct-acting antiviral drugs where the plaintiff alleged that prison policy was to deny treatment to all prisoners who were within nine

months of release date).  Nor does he contend that Allen opted for an easier, less-efficacious course of treatment.  *See generally* Am. Compl.

Plaintiff appears to hang his hat on the third type of violation identified in *Abu Jamal*:  that Allen prevented him from receiving recommended treatment for a serious medical need.  *See id.* ¶ 37 (alleging that the BOP prioritization protocol "effectively made a conscious decision to deny, or at least defer, treatment to a class of prisoners, who either were already manifesting signs and symptoms of progressive liver disease or confronted a substantial risk of future harm in this regard").  To support this claim, Plaintiff contends that, in October 2015, a panel of experts with the American Association for the Study of Liver Disease ("AASLD") and the Infectious Diseases Society of America ("IDSA") declared that "treatment with [direct-acting antiviral drugs] is *recommended for all patients* with chronic [Hepatitis C]."  *See* Am. Compl. ¶ 43 (emphasis added).  Plaintiff maintains that despite this expert panel's "recognition of . . . the medical standard of care," *see id.* ¶ 44, Allen denied Plaintiff treatment with Harvoni two months later in December 2015 based on the BOP protocol, which was premised on an inmate's APRI score, a clinical indicator of cirrhosis.  *See id.* ¶¶ 38, 45.  Plaintiff avers that Allen's denial, and his reliance on the prioritization protocol for the denial, was "no longer consistent with accepted professional medical judgment."  *See id.* ¶ 45.

Even when viewed in the light most favorable to Plaintiff, these allegations do not plausibly establish that Allen violated a clearly established right to receive recommended treatment for a serious medical need.  The court so concludes for three reasons.  First, the AASLD/IDSA's recommendation to treat all Hepatitis C patients with direct-acting antiviral drugs was not, as Plaintiff claims, "unequivocal[]."  *See id.* ¶ 43.  To be certain, the expert panel did make a general recommendation that patients with Hepatitis C receive treatment with direct-acting antiviral drugs.

But the panel also qualified its recommendation in ways relevant to prison populations. The panel stated, "in certain settings there remain factors that impact access to medications and the ability to deliver them to patients. In these settings, practitioners may still need to decide which patients should be treated first. The descriptions below of unique populations may help physicians make more informed treatment decisions for these groups." *See* Am. Compl., Ex. D, at 28.[3] The panel identified "incarcerated persons" as a unique population. It observed that "[c]oordinated treatment efforts within prison systems would likely rapidly decrease the prevalence of HCV infection in this at-risk population, although research is needed in this area." *Id.* at 37. Thus, the AASLA/ISDA's recommendations as to treatment with direct-acting antiviral drugs was not categorical for prison populations, and Plaintiff offers no reason to believe that Allen should have viewed it in any other way.

Second, the timing of the AASLD/IDSA panel's recommendation and the rapidly changing medical landscape undermines the notion that Plaintiff had a settled, absolute right to treatment at the time of Allen's decision. Starting in 2013, the AASLD/IDSA recommended a prioritization protocol for Hepatitis C sufferers "analogous" to the one adopted by BOP. Am. Compl. ¶ 42. Under that approach, "patients perceived to have the greatest need would be treated first." *Id.* The AASLD/IDSA recommended this phased approach to "gain experience with [the drugs'] safety before we encouraged all infected persons to initiate therapy." *Id.* The Food and Drug Administration approved Harvoni the following year in October 2014. *See id.* ¶ 13. A year later, in October 2015, the AASLD/IDSA expert panel made its recommendation for expanded treatment using direct-acting antiviral drugs, a *mere two months* before Allen evaluated and denied Plaintiff's request for treatment using BOP's prioritization protocol. *See id.* ¶¶ 43, 45. BOP did not sit still

---

[3] The court uses ECF pagination for exhibits to the Amended Complaint.

following the AASLD/IDSA's recommendation.  It issued a guidance in May 2016 that "encouraged" BOP Clinical Directors to "submit *all* priority 1 and 2 patients for treatment" (Plaintiff was priority 3 at the time). *Id.* ¶ 21 (emphasis added).  Then, five months later, in October 2016, BOP released "an updated set of guidelines on the evaluation and management of chronic HCV infection which, among other things, broadened the criteria for Priority 2 status in the FBOP treatment hierarchy.  Under these broadened criteria, Plaintiff qualified for Priority 2 status," thereby becoming eligible for treatment with Harvoni or an analogous drug. *Id.* ¶ 22.  After Plaintiff submitted a new application for treatment on March 1, 2017, BOP approved him for treatment less than a week later not with Harvoni, but another direct-acting antiviral drug, Zepatier. *See id.* ¶ 23.  This timeline of events shows the "rapidly evolving . . . medical developments" in the area of Hepatitis C treatment and the federal prison system's response to those developments. *Cunningham*, 2017 WL 2377838, at *4.  It also undercuts the proposition that, as of December 2015, Allen violated a clearly established right to treatment for a serious medical need. *See id*; *see also Riggleman v. Clarke*, Case No. 5:17-cv-00063, 2019 WL 1867451 (W.D. Va. May 25, 2019), at *6 (following *Cunningham* and finding, on summary judgment, the defendant was entitled to qualified immunity with respect to Hepatitis C treatment decision); *Redden v. Ballard*, No. 2:17-cv-01549, 2018 WL 4327288, at *8 (S.D. W. Va. July 17, 2018) (Report and Recommendation) (dismissing claims against individual defendants based on qualified immunity based on *Cunningham*), proposed findings and recommendation adopted, 2018 WL 4323921 (S.D. W. Va. Sept. 10, 2018), aff'd on other grounds, 748 F. App'x 545 (4th Cir. 2019) (unpublished per curiam); *cf. Lovelace*, 2019 WL 3728265, at *1 & n.1, 5 (rejecting qualified immunity at the motion-to-dismiss stage for state prison official in part due to the length of time that had passed

between the AASLD/IDSA's recommended change in the standard of care in 2016 and the denial of treatment in February 2017).

Third, qualified immunity is intended to "protect[] all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). Based on the facts pleaded, Plaintiff has not made out a plausible claim that Allen's denial of treatment with Harvoni in December 2015 was either plainly incompetent or knowingly violated law. As discussed, in December 2015, when Allen denied Plaintiff's request for treatment, the AASLD/IDSA panel had issued its recommendation modifying the general standard of care a mere two months earlier. Moreover, Allen's denial was predicated on a *clinical* indicator of Hepatitis C severity: the APRI score. Plaintiff does not allege that, as of December 2015, APRI scores were no longer accepted as an indicator of liver damage, or that his APRI score was inaccurate. To the contrary, Plaintiff alleges that "medical community standards as practiced by the private sector insurer United Health Care and U.S. Veterans Administration" accept APRI scores as an indicator of cirrhosis of the liver. Am. Compl. ¶ 12. Plaintiff does allege, however, that BOP improperly relied only on APRI scores and knew of another diagnostic technique—a blood test called Fibrosure—showing that his liver condition was more severe than his APRI score alone indicated. *See id.* ¶¶ 10, 21, 38. According to Plaintiff, Fibrosure tests performed in 2012, 2013, and 2015, when he was in state custody, "indicat[ed] cirrhosis," and these results were transferred to BOP. *Id.* ¶ 21. But even if Plaintiff's Fibrosure test results pointed to a more substantial liver problem, and *BOP* was aware of these results, he does not allege that *Allen* himself knew of them. On the contrary, the one-page application for treatment that Allen received in December 2015, which Plaintiff attaches to his Amended Complaint, says *nothing* about Fibrosure results. *See id.* ¶ 18; Am. Compl., Ex. A, at 16. So, the

10

particular diagnostic indicator that Plaintiff asserts demonstrates Allen's deliberate indifference was not actually before Allen.  *Cf. Lovelace*, 2019 WL 3728265, at *1 & n.2 (alleging that the defendants knew of the plaintiff's FibroScan indicating cirrhosis yet denied treatment).

In sum, even when viewing the facts in the light most favorable to Plaintiff, the court cannot find that he has advanced a plausible Eighth Amendment claim that overcomes the defendant's qualified immunity defense.  In reaching this conclusion, the court is mindful that the very purpose of qualified immunity is not merely to protect government officials from liability, but also the burdens associated with discovery.  *See Iqbal*, 556 U.S. at 672.  Plaintiff's pleading does not warrant subjecting Allen to such burdens.

IV.

For the reasons set forth above, the court grants Defendant's Motion to Dismiss, ECF No. 77.  A final order accompanies this Memorandum Opinion.

Dated:  August 22, 2019

Amit P. Mehta
United States District Court Judge