## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

JEAN-GABRIEL BERNIER,                    )
                                         )
      Plaintiff,                         )
                                         )
        v.                            )     **Case No. 16-cv-00828 (APM)**
                                         )
JEFF ALLEN,                              )
                                         )
      Defendant.                         )
_____ )

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.

Plaintiff Jean-Gabriel Bernier, a federal prisoner, is suing Defendant Jeff Allen, Chief Physician for the Bureau of Prisons, for violating his Eighth Amendment rights. Plaintiff claims that, in December 2015, Defendant unconstitutionally denied him Harvoni, an antiviral drug that effectively cures Hepatitis C. The court previously granted Defendant's motion to dismiss on the ground that Plaintiff had not plausibly alleged facts that could overcome Defendant's qualified immunity defense. Plaintiff now requests that the court either (1) reconsider its ruling and vacate its previous Order dismissing the action, or (2) amend its Order to clarify that the dismissal is without prejudice, and grant Plaintiff leave to file a Second Amended Complaint. The court finds that Plaintiff's proposed Second Amended Complaint cures the defects in his earlier pleading by alleging facts that plausibly establish a clear violation of Plaintiff's Eighth Amendment rights. Therefore, the court grants Plaintiff's motion to amend its previous Order and accepts for filing Plaintiff's proposed Second Amended Complaint.

II.

The court has detailed the factual and procedural history of this case at length in its previous opinions.  *See* Mem. Op., ECF No. 88 [hereinafter *Bernier III*], at 1–2; *Bernier v. Trump* (*Bernier II*), 299 F. Supp. 3d 150, 152–54 (D.D.C. 2018); *Bernier v. Trump* (*Bernier I*), 242 F. Supp. 3d 31, 35–37 (D.D.C. 2017).  Therefore, the court will only briefly summarize the information that is relevant for purposes of Plaintiff's instant motion.

Plaintiff is a prisoner in custody of the Federal Bureau of Prisons ("BOP") who suffers from Hepatitis C.  Am. Compl., ECF No. 70 [hereinafter Am. Compl.], ¶¶ 5, 7.  In December 2015, Plaintiff requested that the BOP treat his condition with Harvoni, a direct-acting antiviral drug, which had been approved by the Food and Drug Administration one year prior, in October 2014.  *Id.* ¶¶ 13, 18, 22.  Harvoni is extremely effective, curing nearly 100 percent of patients with characteristics similar to those of Plaintiff, but it is not cheap: a 12-week course of treatment costs approximately $94,000.  *Id.* ¶¶ 13–14.  On December 31, 2015, Defendant rejected Plaintiff's application, reasoning that Plaintiff's symptoms did not qualify him for immediate treatment under the BOP's existing prioritization protocol for administering antiviral treatment to inmates with chronic Hepatitis C infections.  *Id.* ¶¶ 19, 21.

Proceeding pro se, Plaintiff filed this action in May 2016.  *See generally* Compl., ECF No. 1.  Plaintiff alleged, among other things, that Defendant violated Plaintiff's Eighth Amendment rights when he denied Plaintiff's request for Harvoni treatment in December 2015.  *See id.* ¶¶ 10–27a, 46.  In 2017, the court granted Defendant's motion to dismiss on the ground that Plaintiff had not plausibly overcome Defendant's qualified immunity defense.  *Bernier I*, 242 F. Supp. 3d at 39.  The court later reconsidered its decision, finding that it had framed the asserted Eighth Amendment right too narrowly.  *See Bernier II*, 299 F. Supp. 3d at 157.  The court

nevertheless dismissed the action for insufficient service of process, but allowed Plaintiff to file an amended complaint and to properly serve it on Defendant.  *See id.* at 157–59.  In June 2018, Plaintiff filed an amended complaint—this time with the help of an attorney—and served Defendant shortly thereafter.  *See generally* Am. Compl.; Aff. of Service, ECF No. 72.

Once again, the court dismissed Plaintiff's Amended Complaint on qualified immunity grounds.  The court rejected Plaintiff's contention that the Eighth Amendment right in question should be broadly defined as the "right of prisoners to adequate medical care, and to be free from deliberate indifference to their serious medical needs."  *See Bernier III* at 4 (quoting Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. to Dismiss or for Summ. J., ECF No. 83, at 15).  This "general proposition," the court reasoned, was not sufficiently "particularized . . . so that the contours of the right are clear to a reasonable official."  *Id.* at 4–5 (quoting *Reichle v. Howards*, 566 U.S. 658, 665 (2012)).

Next, the court considered whether Plaintiff had plausibly alleged any of the three more narrowly defined Eighth Amendment violations outlined in *Abu-Jamal v. Kerestes*, 779 F. App'x 893 (3d Cir. 2019).  *See id.* at 5–6.  In that case, the Third Circuit observed that a prison official exhibits deliberate indifference in violation of the Eighth Amendment if he: (1) delays necessary medical treatment for non-medical reasons, (2) opts for an easier and less efficacious treatment, or (3) prevents an inmate from receiving recommended treatment for serious medical needs.  *See id.* (citing *Abu-Jamal*, 779 F. App'x at 900).  Plaintiff did "not rely on either the first or second type of violation" identified in *Abu-Jamal*, but instead "h[u]ng his hat" on only the third type of violation.  *Id.* at 6–7.  In support of his claim that Defendant prevented him from receiving recommended treatment for a serious medical need, Plaintiff noted that, in October 2015—two months before Defendant rejected his request for Harvoni treatment—a panel of experts with the

American Association for the Study of Liver Disease ("AASLD") and the Infectious Diseases Society of America ("IDSA") declared that "treatment with [direct-acting antiviral drugs] is recommended for all patients with chronic [Hepatitis C]." *See* Am. Compl. ¶ 43. Plaintiff argued that by denying Plaintiff's treatment request on the basis of the BOP's then-existing priority treatment protocol, Defendant "disregarded the medical standard of care for treatment of [Hepatitis C] infection . . . , in reliance upon a prioritization protocol no longer consistent with accepted professional medical judgment." *Id.* ¶ 45.

The court held that Plaintiff had not plausibly pleaded a clear Eighth Amendment violation for three reasons. First, the AASLD/IDSA's recommendation to treat all Hepatitis C patients with direct-acting antiviral drugs was "qualified . . . in ways relevant to prison populations," and was not "unequivocal" as Plaintiff had argued. *Bernier III* at 7–8 (cleaned up). Second, the "timing of the AASLD/IDSA panel's recommendation and the rapidly changing medical landscape undermine[d] the notion that Plaintiff had a settled, absolute right to treatment at the time of [Defendant's] decision." *Id.* at 8. The court noted that AASLD/IDSA had a prioritization protocol that was analogous to the BOP's until "a *mere two months*" before Defendant denied Plaintiff's application in December 2015, and that BOP did not "sit still" following the AASLD/IDSA's new recommendation; rather, it updated its guidance in May 2016, and again in October 2016, whereupon Plaintiff became eligible for treatment with Harvoni or an analogous drug. *Id.* at 8–9. Finally, the court found that Defendant's decision was not plainly incompetent or a knowing violation of the law because it was based on Plaintiff's low "APRI score," a medically-accepted diagnostic measure of liver cirrhosis. *Id.* at 10; *see also id.* at 7. Though Plaintiff also pointed to the results from another diagnostic technique—a blood test called Fibrosure—showing that his liver condition was more severe than his APRI score alone indicated, the court found that Plaintiff

4

had failed to allege that Defendant knew of the Fibrosure results. *Id.* at 10–11. Therefore, the court concluded that Plaintiff had not adequately alleged Defendant's deliberate indifference based on this "particular diagnostic indicator." *Id.* at 11.

Plaintiff now moves the court to alter or amend its judgment pursuant to Federal Rule of Civil Procedure 59(e). *See* Pl.'s Mot. to Alter or Amend Judgment, ECF No. 90. Plaintiff argues that the court clearly erred in rejecting Plaintiff's broad framing of the Eighth Amendment right in question and that the court overlooked certain of Plaintiff's allegations and arguments "laying the foundation" for a finding that Defendant violated a clearly established right under the Eighth Amendment. *See* Pl.'s Mem. of P. & A. in Supp. of His Mot. to Alter or Amendment Judgment, ECF No. 90-1 [hereinafter Pl.'s Mot.], at 6–18 (cleaned up). In the alternative, Plaintiff asks that the court amend its earlier order to clarify that the dismissal was without prejudice and grant Plaintiff leave to file a Second Amended Complaint pursuant to Rule 15(a). *Id.* at 18–20; *see also id.*, Ex. 2, ECF No. 90-3 [hereinafter Second Am. Compl.].[1] Because Plaintiff's Second Amended Complaint cures the defects in his Amended Complaint, the court grants Plaintiff's request for leave to amend and does not reach Plaintiff's other arguments.

III.

A.

The D.C. Circuit announced in *Brink v. Continental Insurance Co.* that, when a plaintiff whose complaint has been dismissed with prejudice files a Rule 59(e) motion to alter or amend a judgment combined with a Rule 15(a) motion requesting leave to amend her complaint, the "denial of the Rule 59(e) motion in that situation is an abuse of discretion if the dismissal of the complaint with prejudice was erroneous; that is, the Rule 59(e) motion should be granted unless 'the

---

[1] Though Plaintiff does not expressly invoke Rule 15(a) in his motion, he does so in his memorandum of points and authorities. *See* Pl.'s Mot. at 18.

allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  787 F.3d 1120, 1128–29 (D.C. Cir. 2015) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).  *Brink*'s permissive standard for reconsidering a judgment based on newly alleged facts applies even to complaints that have been dismissed on their merits for failing to state a plausible claim, *see id.*; *accord Seth v. District of Columbia*, No. 19-7057, 2020 WL 2611716, at *3 (D.C. Cir. Apr. 21, 2020), and appears to mark a departure from the black-letter rule that "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly," 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (3d ed. 2020); *see also Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) ("Rule 59(e) motions need not be granted unless 'there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (quoting *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)).

*Brink*'s holding stems from the "high" bar that the D.C. Circuit has set for dismissals with prejudice, in which such a dismissal is permitted only when the plaintiff "could not allege additional facts that would cure the deficiencies in her complaint."  *Belizan v. Hershon*, 434 F.3d 579, 584 (D.C. Cir. 2006).  Thus, when a plaintiff adduces facts that would cure the deficiencies in a complaint that has been dismissed with prejudice, leave to amend is required because the original dismissal with prejudice was *a fortiori* "erroneous."  *Brink*, 787 F.3d at 1128.[2]

---

[2] The court notes that the D.C. Circuit's strict requirement regarding dismissals with prejudice "is not fully aligned with" Federal Rule of Civil Procedure 41(b), which governs the presumptive effect of involuntary dismissals.  *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J., concurring) (noting that, contrary to the Circuit's precedent, "Rule 41(b) contemplates that a Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its discretion states otherwise").  The Circuit's demanding standard is intended to honor the Federal Rules' "preference . . . for resolving disputes on their merits," *see Rollins*, 703 F.3d at 131 (quoting *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012)), but makes little sense in the context of an ordinary 12(b)(6) dismissal for failure to state a plausible claim, which *is* a resolution on the merits, *see Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992) (holding that a Rule 12(b)(6) dismissal for failure to state a claim "is a resolution on the merits and is ordinarily prejudicial"); *see also In re Interbank Funding*

Likewise, if the court grants a plaintiff's Rule 59(e) motion, it must also grant the accompanying Rule 15(a) motion "unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, or futility of amendment.'" *Firestone*, 76 F.3d at 1208 (cleaned up) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Brink*, 787 F.3d at 1128–29.

## B.

In this case, because the court dismissed Plaintiff's complaint on qualified immunity grounds, reconsideration and leave to amend is required if the additional, consistent facts alleged in Plaintiff's proposed Second Amended Complaint plausibly establish a violation of clearly established law sufficient to overcome Defendant's qualified immunity defense. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal . . . ."). The court evaluates a defendant's claim of qualified immunity by determining whether the facts alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201

---

*Corp. Sec. Litig.*, 432 F. Supp. 2d 51, 54 & n.4 (D.D.C. 2006) (canvassing the distinction between merits- and non-merits-based 12(b)(6) dismissals). Nevertheless, the Circuit has not drawn such a distinction. *See, e.g.*, *Rollins*, 703 F.3d at 131 (confirming that, even when a district court has dismissed a complaint on the merits for failure to state a plausible claim, "dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" (internal quotation marks and citation omitted)); *Belizan*, 434 F.3d at 583 ("[A] complaint that omits certain essential facts and thus fails to state a claim warrants dismissal pursuant to Rule 12(b)(6) but not dismissal with prejudice."). Thus, it seems, from this tension with Rule 41(b)'s presumption that merits dismissals are with prejudice, *see* Fed. R. Civ. P. 41(b), flows *Brink*'s tension with the otherwise strict requirements for reconsideration under Rule 59(e).

It also bears noting, however, that *Brink*'s Rule 59(e) holding is not compelled by *Firestone* or *Belizan*, the only two authorities it cites as support. In both *Firestone* and *Belizan*, the district court dismissed the complaint with prejudice based on "procedural technicalities," not merits issues, *Belizan*, 434 F.3d at 584, and the plaintiffs in both cases had requested leave to amend their complaints before the district courts dismissed their cases (though neither complied with Local Rule 15.1's requirement to file a proposed amended complaint), *see id.* at 581; *Firestone*, 76 F.3d at 1207–09. In contrast, *Brink* involved a merits-based dismissal for failure to state a plausible claim, and the plaintiffs never requested leave to amend their complaint before it was dismissed. *See* 787 F.3d at 1124. Thus, *Brink* appears to have paved new ground in holding that a district court must grant a Rule 59(e) motion when the additional facts alleged would cure the deficiencies in a complaint previously dismissed on the merits, and not for procedural technicalities.

(2001); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). To conclude that a right was clearly established, the court must determine that "it would [have] be[en] clear to a reasonable [official] that his conduct was unlawful in the situation he confronted," *Saucier*, 533 U.S. at 202, based on "[c]ontrolling precedent from the Supreme Court, the applicable state supreme court, or from the applicable circuit court," *Corrigan v. District of Columbia*, 841 F.3d 1022, 1041 (D.C. Cir. 2016) (Brown, J., dissenting), or "a *robust* consensus of cases of persuasive authority," *id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

The Supreme Court announced in *Estelle v. Gamble* that, to state an Eighth Amendment claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." 429 U.S. 97, 106 (1976). Courts have developed a two-part test an incarcerated person must satisfy to establish an Eighth Amendment claim based on an alleged delay or refusal to provide medical care. First, the court must consider whether the person "suffered from an objectively serious medical condition," and second, it must examine whether the "defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)), *as amended* (Aug. 25, 2016); *see also Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) ("To show deliberate indifference, [a plaintiff must] allege that [the defendant] had subjective knowledge of [a] serious medical need and recklessly disregarded the excessive risk to inmate health or safety from that risk.").[3] A plaintiff cannot overcome qualified immunity simply by alleging deliberate indifference, however, as that general principle is not defined in "a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*, 566 U.S. at 665 (internal quotation

---

[3] The parties do not seriously dispute that Plaintiff's chronic Hepatitis C constitutes an objectively serious medical condition. *See Bernier I*, 242 F. Supp. 3d at 41 (holding that Plaintiff had "easily establishe[d] a "serious medical need").

marks and citation omitted); *see also Bernier III* at 4–5.  Rather, clearly established deliberate indifference may be shown by specific conduct, such as when a prison official "delays necessary medical treatment for non-medical reasons, opts for an easier and less efficacious treatment of the inmate's condition," or "prevent[s] an inmate from receiving recommended treatment for serious medical needs." *Abu-Jamal*, 779 F. App'x at 900 (internal quotation marks and citations omitted).

IV.

Plaintiff's Second Amended Complaint offers two additional factual allegations, which he contends evince Defendant's deliberate indifference to his serious medical needs:  (1) the BOP developed its prioritization protocol "in order to minimize the high cost attending the administration of drugs such as Harvoni, [and] not on the basis of any medical justification," Second Am. Compl. ¶ 22; and (2) Defendant was aware of Plaintiff's Fibrosure results showing cirrhosis and disregarded them when he denied Plaintiff's application for Harvoni treatment in December 2015, *id.* ¶ 21; *see also* Pl.'s Mot. at 19.  These additional factual allegations plausibly establish two clearly established Eighth Amendment violations as outlined by the Third Circuit in *Abu-Jamal*:  "delay[ing] necessary medical treatment for non-medical reasons," and deliberately preventing "an inmate from receiving recommended treatment for serious medical needs."  779 F. App'x at 900 (internal quotation marks and citations omitted).

A.

Regarding the first alleged violation, a "robust consensus of cases" in the circuit courts, *see Ashcroft*, 563 U.S. at 742 (internal quotation marks and citation omitted), has consistently held that a prison official exhibits deliberate indifference in violation of the Eighth Amendment when she denies or delays medically necessary treatment purely for non-medical reasons such as cost, administrative convenience, or personal animus.  *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) ("[A] defendant who delays necessary treatment for non-medical reasons

9

may exhibit deliberate indifference."); *Roe v. Elyea*, 631 F.3d 843, 860 (7th Cir. 2011) (holding that the district court properly rejected a prison doctor's qualified immunity defense because, among other things, the "record evidence . . . permitted the jury to conclude that, in formulating the . . . policy," the defendant was "motivated by administrative convenience rather than patient welfare"); *Glenn v. Barua*, 252 F. App'x 493, 498 (3d Cir. 2007) (concluding that a prisoner's allegations that a defendant denied the prisoner treatment "for punitive, non-medical reasons and consciously disregarded the risk that inaction would cause [the prisoner] prolonged suffering" were sufficient to state a claim); *Smith v. Mo. Dep't of Corr.*, 207 F. App'x 736, 737 (8th Cir. 2006) (plaintiff stated an Eighth Amendment claim based, in part, on allegations that the defendant would not allow to him to see a specialist because of cost); *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004) ("When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity."); *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) ("[I]f necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out." (cleaned up)).

"The deliberate indifference standard of *Estelle*," however, "does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Morris v. Livingston*, 739 F.3d 740, 748 (5th Cir. 2014) (cleaned up) (quoting *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997)); *see also Zingg v. Groblewski*, 907 F.3d 630, 638 (1st Cir. 2018). "[A]dministrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions . . . ." *Elyea*, 631 F.3d at 863. The constitution is violated, however,

10

when such factors are "considered *to the exclusion of reasonable medical judgment* about inmate health."  *Id.*; *see also Brown v. Beard*, 445 F. App'x 453, 456 (3d Cir. 2011).

Here, Plaintiff has alleged (and the court accepts as true for present purposes, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), that the BOP developed its Hepatitis C treatment protocol solely "to minimize the high cost attending the administration of drugs such as Harvoni," and "not on the basis of any medical justification," Second Am. Compl. ¶ 22.  Coupled with the alleged facts that Harvoni costs nearly $100,000 per course of treatment, *id.* ¶ 13, and that Defendant knowingly disregarded Plaintiff's Fibrosure test results which would have seemingly entitled him to treatment even under the BOP's own protocol, *id.* ¶¶ 21, 46, the court finds that Plaintiff has plausibly pleaded that Defendant denied him treatment for "for purely cost and non-medical reasons," *Abu-Jamal*, 779 F. App'x at 900, and that those non-medical factors were "considered *to the exclusion of reasonable medical judgment* about inmate health," *Elyea*, 631 F.3d at 863.

In so ruling, however, the court does not foreclose the possibility that Defendant may be able to establish at a later stage in this proceeding that, for instance, "prioritization was necessary given a limited supply of the anti-viral drugs," or that other non-administrative considerations, such as the "lack of medical consensus . . . as to the appropriate procedures surrounding Hepatitis C treatment," motivated the BOP's development and implementation of its protocol.  *Abu-Jamal*, 779 F. App'x at 900 n.9; *see also Elyea*, 631 F.3d at 860 (emphasizing that "the necessity of individualized treatment does *not* mean that the use of treatment protocols and guidelines is generally unconstitutional," and that "such standard practices" often "facilitate[] appropriate and quality care within large and administratively complex institutional settings, including correctional systems").

B.

As to the second *Abu-Jamal* violation, circuit courts have routinely held that a prison official may exhibit deliberate indifference in violation of the Eighth Amendment when he "prevents an inmate from receiving recommended treatment for serious medical needs." *Abu-Jamal*, 779 F. App'x at 900 (cleaned up) (quoting *Lanzaro*, 834 F.2d at 347); *see also, e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) ("Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, . . . acts in a manner contrary to the recommendation of specialists . . . ."); *Brown v. District of Columbia*, 514 F.3d 1279, 1284 (D.C. Cir. 2008) (holding that a prisoner stated an Eighth Amendment violation by alleging that prison officers failed to transfer him for sixty days after a prison doctor diagnosed the prisoner with gallstones and ordered him to be transferred to a hospital for treatment); *Watson v. Veal*, 302 F. App'x 654, 655 (9th Cir. 2008) (holding that a prison official's failure to provide recommended treatment due to a "difference of medical opinion may amount to deliberate indifference if the prisoner shows that the course of treatment was medically unacceptable under the circumstances and defendants chose this course in conscious disregard of an excessive risk to the prisoner's health." (cleaned up)); *Webb v. Driver*, 313 F. App'x 591, 592 (4th Cir. 2008) (allegations that prison officials failed to schedule medically necessary hernia surgery were sufficient to state a claim for deliberate indifference due, in part, to documentation showing that two surgeons had recommended the surgery); *Thompson v. Williams*, 56 F.3d 1385 (5th Cir. 1995) ("Under certain circumstances, allegations of deliberate indifference may be shown when prison officials deny an inmate recommended treatment by medical professionals." (internal quotation marks and citation omitted)); *United States v. Fitzgerald*, 466 F.2d 377, 380 n.6 (D.C. Cir. 1972)

("[T]he *intentional* denial to a prisoner of *needed* medical treatment is cruel and unusual punishment, and violates the 8th amendment to the Constitution of the United States.").

In this case, it was the BOP's *own* treatment recommendations that Defendant allegedly disregarded. Plaintiff alleges that Defendant knew of and ignored Plaintiff's Fibrosure test results indicating liver cirrhosis, an advanced stage of liver scarring associated with significant health consequences, including "widespread itching, arthritic pain in joints throughout the body, kidney disease, jaundice, fluid retention with edema, internal bleeding, easy bruising, abdominal ascites, mental confusion, lymph disorders and extreme fatigue." *See* Second Am. Compl. ¶¶ 21, 33. Had Defendant considered Plaintiff's Fibrosure results, it is plausible that Plaintiff would have qualified for treatment under Priority 1—the "highest priority of treatment" in the BOP's protocol. *Id.* ¶ 21 (explaining that Priority 1 patients "include those with documented cirrhosis"); *see also id.*, Ex. B, at 21[4] (BOP's prioritization protocol stating that "*[a]n APRI score is not necessary for diagnosing cirrhosis if cirrhosis has been diagnosed by other means*").[5] Instead, Plaintiff was designated "a Priority 3 patient" based solely on his APRI score, rendering him ineligible for antiviral treatment. Second Am. Compl. ¶¶ 21, 39.

---

[4] The court uses ECF pagination for exhibits to the Second Amended Complaint.

[5] Plaintiff does not expressly argue that he was entitled to a higher priority level based on his Fibrosure test results. Rather, he contends only that "[a]t a minimum, this . . . would have placed a competent physician and agency Medical Director in Defendant Allen's position and with his responsibilities on affirmative inquiry notice with respect to the entirety of Plaintiff's medical records, including his Fibrosure test results, before determining, based solely on Plaintiff's APRI score, that Plaintiff should be denied treatment and relegated to monitoring." *See* Pl.'s Mot. at 18. It is not clear the legal significance of Plaintiff's "notice" argument; however, at this stage, the court will grant Plaintiff the benefit of the doubt that Defendant was on notice that a higher priority treatment category was required. *See* Second Am. Compl. ¶ 46 (arguing that, in disregarding Plaintiff's Fibrosure results, Defendant acted "in contravention of written, specific [BOP] policy"); Pl.'s Mot., Ex. 1, ECF No. 90-2 (Plaintiff arguing in his internal appeal that he could not satisfy the BOP criteria based only on his APRI score, that BOP "erroneously discount[ed]" his Fibrosure results "which ha[ve] shown cirrhosis," and that BOP "ignore[d]" its policy that "a prisoner is to be treated regardless of the APRI, if another indicator shows cirrhosis"); *see also Erickson*, 551 U.S. at 93 (emphasizing in the context of a prisoner seeking Hepatitis C medication that his complaint "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" (alterations in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court will require additional briefing on this issue at summary judgment.

While a prison official does not categorically run afoul of the Eighth Amendment by failing to follow protocol, he exhibits deliberate indifference when (1) his "failure to follow procedure put[s]" an inmate at risk, and (2) he "actually kn[ows] that his actions put" the inmate at risk. *Peralta v. Dillard*, 744 F.3d 1076, 1087 (9th Cir. 2014) (emphasis omitted); *see also Finley v. Huss*, 723 F. App'x 294, 298 (6th Cir. 2018) (the "disregard of policy," coupled with evidence that the officials knew of the prisoner's serious health condition and that failing to follow the prison policy would make the situation worse, "raises strong suspicion of deliberate indifference"); *Petties*, 836 F.3d at 729 (a prisoner doctor's "fail[ure] to follow an existing protocol" may "hint" at deliberate indifference); *Harris v. City of Circleville*, 583 F.3d 356, 369 (6th Cir. 2009) (upholding the district court's rejection of police officers' qualified immunity defense, in part, because the defendants "did not comply with stated jail policy"); *Hostetler v. Green*, 323 F. App'x 653, 658 (10th Cir. 2009) (holding that "a guard's knowledge that a policy was enacted *specifically to prevent sexual assault*, combined with his knowledge that he *did violate* that policy, tends to support—even if it does not mandate—an inference that he was aware of an increased risk of sexual assault to [the plaintiff] when he violated the policy on this particular occasion," which, in turn, supported the district court's finding of deliberate indifference); *Weatherholt v. Bradley*, 316 F. App'x 300, 303 (4th Cir. 2009) (concluding that the district court "accorded insufficient weight to the administrative finding that" the defendant failed to follow required protocol when the apparent "rationale" of the protocol was to prevent violence).

Here, Plaintiff has plausibly established both of the *Peralta* factors. *See* 744 F.3d at 1087. First, the BOP's prioritization protocol suggests that failure to treat high priority inmates puts them at excessive risk. Per the protocol, "certain cases are at higher risk for complications or disease progression and require more urgent consideration for treatment," and Priority 1 patients are the

14

"highest priority for treatment." *See* Second Am. Compl., Ex. B, at 23 (cleaned up).  If, as Plaintiff suggests, he qualified for Priority 1 treatment in December 2015, then the failure to urgently consider him for treatment left him at a "higher risk for complications or disease progression." *Id.* Indeed, Plaintiff alleges that the failure to treat complications associated with cirrhosis can lead to death.  Second Am. Compl. ¶ 34; *see also id.* ¶ 48 (contending that, "[a]s a result of the Defendant's determination, Plaintiff faced both a continuation of the painful symptoms attributable to his chronic" Hepatitis C, and a "substantial risk of serious additional harm").  Had Plaintiff received the requested treatment, it seems likely that these risks would have been mitigated.  The AASLD/IDSA's October 2015 guidelines explain that curing Hepatitis C with direct-acting antiviral drugs like Harvoni leads to "numerous health benefits," with "cirrhosis resolved in half of" patients studied.  *See id.*, Ex. D, at 30.

Additionally, it is plausible that Defendant knew that disregarding the policy would lead to such risks.  Plaintiff alleges that Defendant "disregarded" Plaintiff's Fibrosure results indicating cirrhosis, and that he was "aware" of the results.  Second Am. Compl. ¶ 21.  Nevertheless, Defendant denied Plaintiff's request, stating that the "[c]urrent BOP priority level for treatment" was "not met." *Id.* ¶ 19.  This suggests that Defendant was aware of both the severity of Plaintiff's condition, and BOP's protocol providing that individuals with "documented cirrhosis" are entitled to the "highest priority for treatment," because of their "higher risk for complications or disease progression." *Id.* ¶ 21.  These facts, paired with the well-known risks of cirrhosis, are sufficient to support an inference that Defendant knew that disregarding the BOP's protocol and denying treatment would create excessive risks for Plaintiff, notwithstanding Plaintiff's comparatively low APRI score, *see* Second Am. Compl., Ex. B., at 21 ("*An APRI score is not necessary for diagnosing cirrhosis if cirrhosis has been diagnosed by other means.*").  Thus, accepting Plaintiff's allegations

as true and granting all reasonable inferences in his favor, the court concludes that Plaintiff has plausibly pleaded that Defendant "prevent[ed] [him] from receiving recommended treatment for serious medical needs." *Abu-Jamal*, 779 F. App'x at 900 (internal quotation marks and citation omitted).

The court again stresses, however, that it does not foreclose the possibility that Defendant will be able to establish at a later stage that (1) he was unaware of the Fibrosure tests results, (2) he exercised medical judgment in disregarding or discounting the Fibrosure results, or (3) the Fibrosure results indicating cirrhosis did not in fact constitute "documented cirrhosis" that would have entitled Plaintiff to higher priority treatment under the BOP's protocol. *See* Second Am. Compl. ¶ 21.[6]  Plaintiff has alleged facts sufficient to overcome Defendant's motion to dismiss, but he has not yet shown that Defendant did in fact act with deliberate indifference.

IV.

Because Plaintiff's Second Amended Complaint cures the deficiencies in Plaintiff's Amended Complaint and states a claim that plausibly overcomes Defendant's qualified immunity, the court will grant Plaintiff's motion to alter or amend its earlier judgment dismissing the Complaint with prejudice. *See* Order, ECF No. 89.  For the same reasons, the court will grant Plaintiff's Rule 15(a) request for leave to file an amended complaint. *See Firestone*, 76 F.3d at 1208 ("Although the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, or futility of amendment." (cleaned up)).  Defendant protests that "it would be patently prejudicial

---

[6] The court notes that the clinical director at the prison where Plaintiff is housed observed during an examination conducted in August 2015, that as of the date of the examination, Plaintiff "has not had any clinical symptoms of cirrhosis," Second Am. Compl. ¶ 16, and that Plaintiff's December 2015 treatment application does not list any Fibrosure results, *see id.*, Ex. A, at 17.

to the Defendant for the Court to" grant Plaintiff leave to amend "given the number of times that the Court has afforded Plaintiff to correct flaws in this action." *See* Def.'s Opp'n to Pl.'s Mot., ECF No. 93, at 17.   However, Plaintiff's original pro se complaint *did* allege that the BOP's prioritization protocol was motivated by cost, *see* Compl., ECF No. 1, ¶¶ 25–26, and it at least arguably alleged that Defendant himself knew of Plaintiff's Fibrosure test results, *see id.* ¶¶ 18–19.   Defendant thus was on notice of these allegations at the outset, and the court will not fault Plaintiff that his Amended Complaint, drafted by his newly appointed lawyer, was not explicit in addressing these important facts.   *See Bernier III* at 6–7; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083–84 (D.C. Cir. 1998) (holding that "the prolonged nature of a case does not itself affect whether the plaintiff may amend its complaint," and that "artless drafting of a complaint should not allow for the artful dodging of a claim" (internal quotation marks and citation omitted)).

## V.

For the reasons set forth above, the court grants Plaintiff's Motion to Alter or Amend Judgment, ECF No. 90, clarifies that the dismissal in its previous Order, ECF No. 89, was without prejudice, and grants Plaintiff's request for leave to amend and accepts for filing his Second Amended Complaint, ECF No. 90-3.

Dated:  July 20, 2020

Amit P. Mehta
United States District Court Judge